**IN THE UNITED STATES DISTRICT COURT**
**THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| BRUNSON,<br><br>Plaintiff,<br><br>vs.<br><br>NEXT GEN DRIVETRAIN, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [13] DEFENDANTS' MOTION TO DISMISS**<br><br>Case No: 2:25-cv-00734-CMR<br><br>Chief Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to Chief Magistrate Judge Cecilia M. Romero conducting all proceedings, including entry of final judgment (ECF 11). 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court is Defendant Next Gen Drivetrain (Next Gen) and Nathaniel Valentin's (Valentin) (collectively, Defendants) Motion to Dismiss the Amended Complaint (Motion) (ECF 13). Having considered the Motion, Plaintiff Deron Brunson's (Plaintiff or Mr. Brunson) Opposition (Opposition) (ECF 15), and Defendants' Reply in Support (Reply) (ECF 16), the court finds that oral argument on the Motion is not necessary. *See* DUCivR 7-1(g). For the reasons set forth below, the court GRANTS the Motion.

## I. BACKGROUND

### A. Factual Background

According to the Amended Complaint (ECF 12 or Am. Compl.), Plaintiff purchased an "8L90-E Billet Valve Body w/PulseDelete" (the Valve Body) from Defendants on or about June 24, 2025, for $2,916.08 (*id.* ¶ 14). The Valve Body was delivered to Plaintiff's residence in Utah County, Utah, on or about July 10, 2025 (*id.* ¶ 16). Plaintiff alleges that Valentin, acting in concert with Next Gen, induced him to purchase the Valve Body by representing that it would perform as

promised (*id.* ¶ 13). According to Plaintiff, the Valve Body did not work as represented, Defendants refused to refund his purchase, and the product caused him additional damage (*id.*).

As to the parties, Plaintiff alleges that he resides in Utah County, Utah, and is a citizen of Utah (*id.* ¶¶ 3, 6). He alleges that Next Gen is a limited liability company headquartered in Pennsylvania and that Valentin is a resident and citizen of Pennsylvania (*id.* ¶¶ 2–3, 7). Plaintiff further alleges that the events giving rise to his claims occurred in Utah County (*id.* ¶ 4).

Plaintiff seeks a total of $115,465.36 in damages (*id.* ¶ 5). The Amended Complaint invokes federal-question and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332, respectively (*id.* ¶ 6). Plaintiff alleges that complete diversity exists because he is a citizen of Utah and both Defendants are citizens of Pennsylvania, and that the amount in controversy exceeds $75,000 (*id.* ¶¶ 6–9). He also references the Fourteenth Amendment in support of the court's exercise of jurisdiction (*id.* ¶ 8).

Based on the above allegations, Plaintiff alleges two causes of action. In his First Cause of Action, Plaintiff asserts a breach-of-warranty claim against both Defendants (*id.* ¶¶ 17–40). Plaintiff alleges that, before purchasing the Valve Body, he watched a YouTube interview posted by "The Car Guy Online" featuring Valentin (*id.* ¶ 19). Plaintiff also claims that he reviewed representations on Next Gen's website, including that its valve bodies were "guaranteed not to fail for life" (*id.* ¶¶ 19–25). Plaintiff alleges that Defendants knew Utah residents would view these online materials and that he relied on the representations when purchasing the Valve Body from his Utah residence (*id.* ¶¶ 20–25). According to Plaintiff, both the original Valve Body and a replacement Valve Body (the Valve Bodies) provided by Next Gen failed to work; Defendants then denied responsibility and refused his request for a refund and reimbursement of related installation expenses (*id.* ¶¶ 26–40).

In his Second Cause of Action, Plaintiff asserts fraud against both Defendants based principally on Valentin's statements in the YouTube interview concerning the reliability and performance of Next Gen's products (*id.* ¶¶ 41–50). Plaintiff alleges that Valentin, individually and on Next Gen's behalf, falsely represented that the Valve Body would work properly even though Defendants knew otherwise (*id.* ¶¶ 46–49). Plaintiff claims that the representations were intended to induce his purchase, that he relied on them in Utah, and that he consequently incurred costs associated with installing and removing the two allegedly defective Valve Bodies (*id.*). He further alleges that Defendants' online representations purposefully availed them of conducting business in Utah (*id.* ¶ 45).

For each cause of action, Plaintiff seeks a $3,916.08 refund and $3,816.60 for expenses allegedly incurred in installing and removing the Valve Bodies (*id.* ¶¶ 52–55). He also seeks "$ 100,000" in punitive damages based on Defendants' refusal to issue a refund and their assertion that preexisting transmission problems and Plaintiff's own representations caused the Valve Bodies not to work (*id.* ¶¶ 56–68, 71).

Defendants have filed the present Motion seeking to dismiss the Amended Complaint (ECF 13). Defendants argue the court lacks both subject matter and personal jurisdiction and, alternatively, that the Amended Complaint fails to state a claim (*id.*).

## II. DISCUSSION

As a preliminary matter, the court first addresses Defendants' jurisdictional issues. Because the court concludes that jurisdiction is lacking, it does not reach Defendants' arguments under Rule 12(b)(6). *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93–94 (1998) ("[W]ithout proper jurisdiction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss the suit." (collecting cases)).

**A. Legal Standards**

1. Rule 12(b)(1) Standard

Defendants seek dismissal of the Amended Complaint under Rule 12(b)(1) (ECF 13 at 6–9). A motion to dismiss under Rule 12(b)(1) seeks dismissal for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts "presume no jurisdiction exists absent a showing of proof by the party asserting federal jurisdiction." *U.S. ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 551 (10th Cir. 1992) (citing *Penteco Corp. v. Union Gas System, Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991)). The burden of establishing subject-matter jurisdiction "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff must "'allege in [its] pleading the facts essential to show jurisdiction,' and 'must support [those facts] by competent proof.'" *U.S. ex rel. Precision Co.*, 971 F.2d at 551 (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

A Rule 12(b)(1) challenge may take one of two forms: a facial attack or a factual attack. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Id*. (citing *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015)). By contrast, a factual attack goes beyond the complaint's allegations and presents evidence challenging the facts upon which subject-matter jurisdiction depends. *Id*.

2. Rule 12(b)(2) Standard

Under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086, 1091 (10th Cir.

1998)). "[I]n the preliminary stages of litigation, this burden is 'light.'" *Id*. (citing *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995)). When, as here, the court resolves the motion based on the pleadings and accompanying affidavits without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *OMI Holdings*, 149 F.3d at 1091 (citing *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)). The plaintiff may satisfy this burden through well-pled allegations, affidavits, or other written materials that, if true, would support jurisdiction. *See Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020) (citing *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008)).

The court accepts well-pled factual allegations as true to the extent they are not controverted by the defendant's affidavits and resolves genuine factual disputes in the plaintiff's favor. *Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011) (citing *Wenz*, 55 F.3d at 1505). Conclusory allegations, however, need not be credited and are insufficient to defeat a Rule 12(b)(2) motion. *Dental Dynamics*, 946 F.3d at 1228 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1073 (10th Cir. 2008)). Lastly, the plaintiff must establish personal jurisdiction over each defendant and each claim asserted. *Id*. (citing 4A Charles A. Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1069.7 (4th ed. 2015)).

**B. Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction and possess only the authority conferred by the Constitution and federal statute. *Kokkonen*, 511 U.S. at 377 (citing *Willy v. Coastal Corp.,* 503 U.S. 131, 136–137 (1992)). A case is presumed to fall outside that limited jurisdiction, and the party invoking federal jurisdiction bears the burden of establishing otherwise. *Id*. (citations omitted). Here, Plaintiff invokes subject matter jurisdiction by asserting both federal-question

jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332 (Am. Compl. ¶ 6).

1. <u>The Court Lacks Federal-Question Jurisdiction under 28 U.S.C. § 1331.</u>

Defendants argue that Plaintiff has not established federal-question jurisdiction under 28 U.S.C. § 1331 (ECF 13 at 6–7). The court agrees.

Under 28 U.S.C. § 1331, federal district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." A plaintiff establishes federal-question jurisdiction through a "well-pleaded complaint establish[ing] either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 27–28 (1983). The federal question must appear on the face of the complaint, which must identify the statutory or constitutional provision under which the claim arises and allege sufficient facts showing that the action arises under federal law. *Sac & Fox Nation of Oklahoma v. Cuomo*, 193 F.3d 1162, 1165–66 (10th Cir. 1999) (quoting *Martinez v. United States Olympic Comm.,* 802 F.2d 1275, 1280 (10th Cir. 1986)). Further, the federal issue must be an essential element of the plaintiff's claim; the mere presence of, or reference to, a federal issue does not confer federal-question jurisdiction over an otherwise state-law action. *See Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944, 947 (10th Cir. 2014) (quoting *Merrell Dow Pharm. Inc. v. Thompson,* 478 U.S. 804, 813 (1986)).

Here, the Amended Complaint asserts breach of warranty and fraud, neither of which is brought under the U.S. Constitution or federal statute. As Defendants correctly assert, while the Amended Complaint briefly references the Fourteenth Amendment and due process, it does not connect those provisions to either cause of action (*see* ECF 13 at 6–7). Therefore, the Amended

Complaint has failed to sufficiently allege that the court has federal-question jurisdiction under 28 U.S.C. § 1331.[1]

2. The Court Lacks Diversity Jurisdiction under 28 U.S.C. § 1332.

Under 28 U.S.C. § 1332(a), a party invoking diversity jurisdiction "must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000." *Maxitransfers LLC v. Envios Mi Fiesta Facil 2 LLC*, No. 2:24-cv-00772-TC, 2025 WL 1000843, at *3–4 (D. Utah Apr. 3, 2025) (quoting *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013)). Complete diversity requires that "no plaintiff and no defendant are citizens of the same state[.]" *Id*. (quoting *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014)).

Rather than attacking complete diversity, Defendants argue that Plaintiff cannot satisfy the amount-in-controversy requirement (*id*.).[2]

Here, both of Plaintiff's claims seek the same damages, specifically $7,732.68 (a $3,916.08 refund plus $3,816.60 for expenses allegedly incurred in installing and removing the Valve Bodies), totaling $15,465.36 in alleged actual damages (Am. Compl. ¶¶ 52–55). To take his damages over the $75,000 threshold, Plaintiff additionally seeks $100,000 in punitive damages, taking his total damages to $115,465.36 (*id*. ¶¶ 56–68, 71).

[1] As Defendants point out, Plaintiff's Response makes various conclusory assertions concerning subject-matter jurisdiction, but his arguments supporting jurisdiction are directed almost exclusively toward diversity jurisdiction under 28 U.S.C. § 1332 (ECF 16 at 2). Furthermore, Plaintiff expressly states: "Due to the fact that this case has diversity of citizenship, this court has the jurisdiction to try State claims even if no federal question exists" (ECF 15 at 7). The court therefore construes Plaintiff's Response as relying on diversity jurisdiction under § 1332 rather than federal-question jurisdiction under § 1331. To the extent Plaintiff continues to invoke § 1331, the Amended Complaint does not sufficiently allege a basis for federal-question jurisdiction, and his Response offers no substantive argument or clarification establishing one.

[2] Defendants state that "there appears to be complete diversity of citizenship between the parties . . ." (ECF 13 at 8).

Defendants argue that it is legally certain Plaintiff's claims are worth less than $75,000 and that the court lacks diversity jurisdiction under 28 U.S.C. § 1332 (ECF 13 at 8).

"When federal subject matter jurisdiction is challenged based on the amount in controversy requirement, the plaintiffs must show that it does not appear to a legal certainty that they cannot recover" the jurisdictional amount. *Woodmen of World Life Ins. Socy. v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003) (quoting *Watson v. Blankinship,* 20 F.3d 383, 386 (10th Cir. 1994)). "There is a strong presumption favoring the amount alleged by the plaintiff." *Woodmen*, 342 F.3d at 1216–17 (citing *Adams v. Reliance Standard Life Ins. Co.,* 225 F.3d 1179, 1183 (10th Cir. 2000)).

*i. Plaintiff's Actual Damages*

Defendants first argue that Plaintiff's actual damages are $7,732.68, not $15,465.36 (ECF 13 at 9). Defendants assert that Plaintiff is seeking $7,732.68 in actual damages for his First Cause of Action, and the $7,732.68 sought for his Second Cause of Action is in the alternative; otherwise, Plaintiff would be seeking double recovery (*id.*). Plaintiff argues that he is not seeking damages in the alternative but has asserted independent damages for each claim (*see* ECF 15 at 6–7). Whether Plaintiff asserts $7,732.68 or $15,465.36 in actual damages is immaterial, given that Plaintiff cannot recover punitive damages for his breach of warranty claim.

Punitive damages are not available for claims subject to the Uniform Commercial Code (UCC). *See Jorgensen v. John Clay & Co.*, 660 P.2d 229, 232 (Utah 1983) (explaining that UCC remedies compensate for actual losses and do not permit punitive awards)). Whether the UCC applies to a breach of warranty claim depends on the remedy sought. *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.,* 794 P.2d 11, 14–18 (Utah 1990). Actions for personal injury damages or tortious injury to personal property are not governed by the UCC, while actions for economic or

breach of contract damages are governed by the UCC. *See id*. at 16. Here, Plaintiff's breach of warranty claim seeks economic damages, as opposed to personal injury damages (Am. Compl. at ¶ 40 ("Next Gen breached their warranty and were notified of this breach as described above, and Brunson suffered damages due to this breach as identified by the receipts found in 'Exhibit E'."). Because the claim seeks economic damages, the UCC applies and punitive damages are unavailable.

Finding that Plaintiff cannot recover punitive damages for his breach of warranty claim is important because Plaintiff relies on punitive damages to reach the requisite amount in controversy. Because Plaintiff can recover punitive damages only for his fraud claim, the following analysis of Plaintiff's asserted punitive damages is measured against the $7,732.68 in damages asserted for his fraud claim.

*ii. Plaintiff's Punitive Damages*

As indicated above, Plaintiff relies on punitive damages to meet the amount-in-controversy requirement. "[P]unitive damages may be included in the amount in controversy if awardable under applicable state law, but only in the amount which the state law authorizes." *Baker v. Sears Holdings Corp.*, 557 F. Supp. 2d 1208, 1212 (D. Colo. 2007) (citing *Watson v. Blankinship,* 20 F.3d 383, 386 (10th Cir. 1994)). "Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount." *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943). "Therefore even though [Plaintiff] is limited to actual damages of $[7,732.68]. . . the question remains whether it is apparent to a legal certainty from the complaint that he could not recover, in addition, sufficient punitive damages to make up the requisite $[75,000]." *Id*. at 240.

a. Punitive damages are legally available.

The court first establishes that Plaintiff has sufficiently shown that punitive damages are legally available for his fraud claim. Utah law permits such damages upon an award of compensatory or general damages and clear and convincing evidence of intentionally fraudulent conduct. Utah Code Ann. § 78B-8-201(1)(a). Plaintiff alleges that Defendants knowingly made false representations to induce his purchase, and he seeks punitive damages based on that alleged fraud. Without addressing whether Plaintiff can ultimately prove these allegations, the court finds that punitive damages are legally available and that Plaintiff appears to have asserted them in good faith.

b. Plaintiff cannot recover sufficient punitive damages.

As detailed below, the court finds that it is apparent to a legal certainty from the Amended Complaint that Plaintiff cannot recover sufficient punitive damages to make up the requisite $75,000. In undertaking this determination, the court considers whether Plaintiff's alleged punitive damages are an amount which Utah law authorizes. *Baker*, 557 F. Supp. at 1212.

Utah courts have stated a list of seven factors which courts must consider in assessing the amount of punitive damages:

> (i) the relative wealth of the defendant; (ii) the nature of the alleged misconduct; (iii) the facts and circumstances surrounding such conduct; (iv) the effect thereof on the lives of the plaintiff and others; (v) the probability of future recurrence of the misconduct; (vi) the relationship of the parties; and (vii) the amount of actual damages awarded

*Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 808 (Utah 1991) (quoting *Bundy v. Century Equip. Co.,* 692 P.2d 754, 759 (Utah 1984)). The Utah Supreme Court further clarified that its "cases have done little more than list these factors. No relative weights have been assigned them, and no standards or formulas have been established for properly evaluating them when making an award

or when reviewing the propensity of a jury award." *Id*. That being said, the Utah Supreme Court did emphasize that the total actual damages alleged "must bear a 'reasonable and rational' relationship to the actual damages." *Id.* at 810 (quoting *Bundy*, 692 P.2d at 759). The *Crookston* court further clarified that "[a]lthough vague in its articulation, an examination of the results of our cases shows that in its operation, this 'reasonable and rational' relationship principle has produced some fairly predictable results." *Id.*

As Defendants correctly highlight, Utah courts generally consider a 3:1 ratio justifiable (meaning the ratio of punitive to actual damages) when the punitive award is below $100,000, while a lower ratio is ordinarily appropriate when the award exceeds $100,000. *Diversified Holdings, L.C. v. Turner*, 63 P.3d 686, 697 (Utah 2002) (citing *Crookston*, 817 P.2d at 810) (explaining "Generally, we have found punitive damage awards below $100,000 not to be excessive only when the punitives do not exceed actual damages by more than a ratio of approximately 3 to 1."). Awards exceeding these guidelines are presumptively excessive and warrant greater judicial scrutiny, though they are not bright-line ceilings. *See Biesele v. Mattena*, 449 P.3d 1, 9 (Utah 2019) (citing *Crookston*, 817 P.2d at 811); *see also Diversified Holdings*, 63 P.3d at 697 n.11 ("These ratios are intended to be flexible guidelines, not rigid formulae."). Although no rigid formula applies, few awards significantly exceeding a single-digit ratio satisfy due process. *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 425 (2003).

Here, Plaintiff asserts $100,000 in punitive damages. Using $7,732.68 as Plaintiff's actual damages, the Amended Complaint asserts a punitive-to-actual-damages ratio of approximately 13:1 (*i.e.*,100,000 divided by 7732.68). And to exceed the $75,000 jurisdictional threshold, Plaintiff would need more than $67,267.32 in punitive damages (*i.e*, 75,000 minus 7732.68), a ratio of approximately 8.7:1 (*i.e.*, 67267.32 divided by 7732.68). Both ratios exceed the relevant

ratios articulated in *Crookston*. Although the *Crookston* framework is not a rigid benchmark, Plaintiff's asserted punitive damages warrant greater judicial scrutiny. *Crookston*, 817 P.2d at 811.

In *State Farm*, the Utah Supreme Court held that "ratios greater than those we have previously upheld may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'" 538 U.S. at 425 (citing *BMW of N.A., Inc. v. Gore*, 517 U.S. 559, 582 (1996) (finding that a higher ratio might be necessary where "the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine")).

Here, Plaintiff alleges a commercial transaction with a quantifiable economic loss of $7,732.68. Although Plaintiff alleges multiple false representations made by Defendants, and that there are other individuals that have "faced the bad acts of [Defendants]," even accepting these allegations as true, the allegations do not demonstrate a particularly egregious act necessary to justify a punitive award approaching an 8.7:1 ratio, much less a 13:1 ratio.

The court therefore concludes that Plaintiff has insufficiently pled diversity jurisdiction because the Complaint does not sufficiently allege that the amount-in-controversy requirement is met. *See, e.g., Hunter v. D.C.*, 384 F. Supp. 2d 257, 261 (D.D.C. 2005) (granting motion to dismiss under Rule 12(b)(1), finding to a "legal certainty that the compensatory damages alleged, in combination with any constitutionally permissible punitive damages award [which was almost thirteen times the compensatory damages claimed], do not reach the jurisdictional threshold of $75,000 established by 28 U.S.C. § 1332(a).")

**C. Personal Jurisdiction**

Defendants also argue that the court lacks personal jurisdiction over them because they do not have the minimum contacts with Utah necessary to satisfy due process (ECF 13 at 9–16).

A federal court may exercise personal jurisdiction over a nonresident defendant only when an applicable statute authorizes jurisdiction, and the exercise of jurisdiction comports with constitutional due process. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (citing *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004)). Because Utah's long-arm statute extends jurisdiction "to the fullest extent permitted by the due process clause," these inquiries collapse into a single question: whether exercising jurisdiction comports with due process. Utah Code Ann. § 78B-3-201(3); *XMission*, 955 F.3d at 839. Due process requires the defendant to have sufficient "minimum contacts" with Utah such that maintaining the action does not offend "traditional notions of fair play and substantial justice." *Id*. (citing *Dudnikov*, 514 F.3d at 1070).

Personal jurisdiction may be either general or specific. "A person is subject to general jurisdiction within a State if its contacts with the State are so 'continuous and systematic' that the person is essentially at home in the State." *Id*. (citing *Old Republic*, 877 F.3d at 904). "Specific jurisdiction, by contrast, allows a court to exercise jurisdiction over an out-of-state defendant only for claims related to the defendant's contacts with the forum State." *Id*. The plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Id*. at 839 (citing *Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). In addition, the plaintiff "must make this showing with respect to each of the claims alleged." *Dental Dynamics*, 946 F.3d at 1228 (citing 4A Charles A. Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure § 1069.7 (4th ed. 2015)).

"Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *Id*. (quoting *Wenz*, 55 F.3d

at 1505). "[T]he plaintiff may defeat a motion to dismiss by presenting evidence (either uncontested allegations in its complaint or other materials, or an affidavit or declaration) 'that if true would support jurisdiction over the defendant.'" *Id*. (quoting *OMI Holdings*, 149 F.3d at 1091). "Conclusory allegations, however, need not be credited by this court and 'will not suffice to defeat a Fed. R. Civ. P. 12(b) motion.'" *Dental Dynamics*, 946 F.3d at 1228 (quoting *Dudnikov*, 514 F.3d at 1073). When the defendant specifically controverts the complaint's jurisdictional allegations, the plaintiff may not rely on those allegations alone and must support them with competent proof. *Wenz*, 55 F.3d at 1505, 1508.

For the reasons stated below, the court finds that Plaintiff has not made a prima facie showing that personal jurisdiction exists.

1. <u>Plaintiff Has Not Made a Prima Facie Showing That General Jurisdiction Exists.</u>

Defendants assert that Valentin resides in Pennsylvania and that Next Gen is organized under Pennsylvania law and maintains its headquarters there (ECF 13 at 10-11 (citing Ex.1, Declaration of Nathaniel Valentin). Plaintiff appears to concede this point (ECF 15 at 3 ("Furthermore, both Next Gen and Valentin are both citizens of the State of Pennsylvania. '[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business...' 28 U.S.C. § 1332(c)(1)."). The court therefore finds that neither Defendant is "at home" in Utah, and therefore neither is subject to general personal jurisdiction in this forum.

2. <u>Plaintiff Has Not Made a Prima Facie Showing That Specific Jurisdiction Exists.</u>

Specific jurisdiction exists when (1) the defendant purposefully directed its activities at residents of the forum state, and (2) the plaintiff's injuries arise out of or relate to those activities.

*XMission*, 955 F.3d at 840 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

*i. Purposeful Direction*

Purposeful direction requires three elements: (1) intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state. *Newsome v. Gallacher*, 722 F.3d 1257, 1265 (10th Cir. 2013).

Defendants argue that Plaintiff cannot establish that either Defendant met the second or third elements of the purposeful direction test (ECF 13 at 13).

Regarding the second element—action expressly aimed at the forum state—Defendants argue that neither Defendant purposefully directed any conduct toward Utah (ECF 13 at 11–16). Defendants assert that Valentin has never been to Utah, that neither Defendant advertises nor directs marketing efforts toward Utah residents, and that Next Gen has no registered agent or other business presence in the state (*id.*; Valentin Declaration ¶¶ 5–12). Defendants further assert that although Plaintiff allegedly discovered Defendants through a YouTube video, Defendants contend that a third party's video available to viewers worldwide was not expressly aimed at Utah (*id.*).

Liberally construing Plaintiff's Amended Complaint, in support of his two Causes of Action, he appears to identify four actions that he contends were expressly aimed at Utah: (1) Defendants' publication of a YouTube video that they allegedly knew would be viewed by Utah residents; (2) their operation of a website that they allegedly knew would be viewed by Utah residents; (3) their sale and shipment of the Valve Body to Plaintiff in Utah; and (4) their post-installation communications with Plaintiff concerning the Valve Body (*see generally* Am. Compl.). In his Response, Plaintiff additionally relies on Utah's policy concerning jurisdiction over nonresident defendants (ECF 15 at 4 (citing *SII MegaDiamond, Inc. v. American*

*Superabrasives Corp.*, 969 P.2d 430, 435 (Utah 1998); Utah Code Ann. § 78-27-22)). Plaintiff emphasizes that expanding business opportunities create corresponding opportunities for contractual breaches, injuries, and fraud (ECF 15 at 4).

Even accepting the well-pled allegations as true and liberally construing the Amended Complaint, Plaintiff has not made a prima facie showing that either Defendant purposefully directed conduct toward Utah.

Plaintiff alleges that Defendants knew the YouTube video and Next Gen's website would be viewed by Utah residents (Am. Compl. ¶¶ 20–21). This is a conclusory jurisdictional allegation and does not allege that Defendants deliberately directed any content toward Utah. Plaintiff does not allege that the video mentioned or targeted Utah, or that Valentin controlled or directed who could view the video. His assertion that Defendants knew Utah residents could access this content is therefore insufficient.

The single sale and shipment to Plaintiff, although more directly connected to Utah, is not sufficient. As this court articulated in *Sys. Designs, Inc. v. New Customware Co., Inc.*, the relevant standards are the defendants' "deliberate and repeated contacts with the forum," "intentional targeting of the forum," or "purposefully directing its conduct towards the forum." 248 F. Supp. 2d 1093, 1102 (D. Utah 2003) (internal citations and quotations omitted). Plaintiff alleges one purchase through a website, but no allegations regarding Utah-focused solicitation(s), advertising, prior negotiations, repeated sales, or continuing obligations.

Finally, the post-installation communications do not alter the analysis. Communications with a forum resident provide some evidence of purposeful direction but are not sufficient here. Plaintiff alleges no continuing course of dealing, solicitation of additional business, or other facts showing that these communications were expressly aimed at Utah.

Taken together, Plaintiff has not made a prima facie showing that either Defendant's actions in support of the two Causes of Action were specifically directed at Utah. Therefore, the court does not find that Plaintiff has sufficiently shown that personal jurisdiction exists over either Defendant.

*ii. Traditional Notions of Fair Play and Justice*

Defendants further contend that even if Plaintiff meets its burden and establishes adequate minimum contacts, exercising jurisdiction over Defendants would offend traditional notions of fair play and substantial justice (ECF 13 at 15–16).

If the plaintiff establishes sufficient minimum contacts, the defendant may nevertheless defeat jurisdiction by presenting a compelling case that exercising jurisdiction would be unreasonable and inconsistent with traditional notions of fair play and substantial justice. *See XMission*, 955 F.3d at 840 (quoting *Burger King,* 471 U.S. at 477). Unreasonableness is assessed by considering:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Id*. (quoting *Old Republic*, 877 F.3d at 909). Defendants argue that consideration of the above factors weighs against exercising jurisdiction; the court agrees.

Plaintiff's Response does not address this argument. Of particular importance to the court are the Amended Complaint's allegations that Defendants are in Pennsylvania and that Defendants make no allegations that they have offices, employees, or any other presence in Utah. Defendants further assert that Next Gen's owner, relevant witnesses, and business records are in Pennsylvania (ECF 13 at 16), a claim that Plaintiff does not dispute. While Utah has some interest in providing

Plaintiff a forum, that interest is limited because the dispute arises from a single online transaction rather than continuing conduct directed toward the state. Thus, the court concludes that exercising jurisdiction in Utah would not comport with traditional notions of fair play and substantial justice.

## III. CONCLUSION AND ORDER

For the reasons stated above, Defendants' Motion to Dismiss (ECF 13) is GRANTED, and the Amended Complaint is DISMISSED without prejudice. Because Plaintiff proceeds pro se, the court grants him leave to file a Second Amended Complaint curing the jurisdictional deficiencies identified in this Order. Any Second Amended Complaint must be filed within thirty days of the date of this Order. This leave is limited to addressing the deficiencies identified in this Order. Plaintiff may not add allegations unrelated to the identified jurisdictional issues unless he first properly moves for and obtains leave to do so. The court will not consider any unauthorized amendments.

DATED this 10 September 2026.

Cecilia M. Romero

Chief Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah